ELLIS, Judge:
Defendant Charles Carter Company, Inc. was the general contractor for the construction of a milk processing plant for The Borden Company. Plaintiff, International Pipe & Ceramics Corporation, was subcontractor for the installation of acid proof brick floors in certain rooms in the plant. After the floors were initially installed, Borden and the Louisiana State Board of Health required certain changes therein. Plaintiff billed defendant for the work done in connection therewith, characterizing all of the work as extra. The invoices for work done in the main processing room and the orange processing room totalled $8,538.89. The invoice for work done in the laboratory was $2,084.25, and in the receiving room was $1,501.33.
Thereafter, there was a dispute among the parties as to whether the work done was corrective work occasioned by improper workmanship or extra work due to deviations from the original plans and specifications. Extensive negotiations were carried on among the parties, and eventually Borden and plaintiff settled their differences, which involved only the main processing room and the orange processing room, for $6,141.51, to be paid plaintiff by Borden. The correspondence in the record reveals that both Borden and plaintiff were of the opinion that the dispute relative to the work done in the receiving room and the laboratory had also been resolved, and that defendant was to pay plaintiff $2,204.-29. Although aware that the settlement between Borden and plaintiff was predicated to some extent on a settlement between plaintiff and defendant, defendant denies that such a compromise was ever reached. Defendant did, however, endorse Borden’s check to it, tendered in compromise of plaintiff’s claim and forwarded it to plaintiff.
Despite continued demand, defendant made no further payment to plaintiff, and this suit followed. After trial on the merits, judgment was rendered in favor of plaintiff for $2,023.02, and defendant has appealed. Plaintiff has answered the appeal, asking that the award be increased to^ $5,961.70.
Plaintiff arrives at the latter figure by adding the original contract amount of $13,349.78 to the amount originally claimed for extra work, $12,124.47, for a total of $25,474.25, and from that he subtracts total payments from all sources, including the Borden compromise of $19,522.55, which leaves the foregoing balance claimed. However, since plaintiff settled its $8,538.89 claim for work in the main and orange processing rooms for $6,141.51, we do not believe that it can now make any claim against defendant for the difference. We *497 find plaintiff’s claim must be limited to the amounts claimed for work in the receiving room and the laboratory.
Plaintiff’s alternative claim is for the $2,204.29 which it alleges it was to receive in compromise from defendant for the said work. We find this claim to be without merit because the compromise was not reduced to writing. Article 3071 of the Civil Code reads as follows:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a law suit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must he reduced into writing." (emphasis added)
It is true that the writing referred to need not be in any sacramental form. The only writing signed by defendant relative to the alleged compromise is its endorsement on Borden’s compromise check, which it then forwarded to plaintiff. We do not believe that this writing proves a compromise between the parties hereto, simply because the check was accompanied by a letter from Borden which alluded to such a compromise.
The record reveals that, after plaintiff completed the laying of the acid proof tile in the receiving room and the laboratory, these rooms did not drain to the satisfaction of the Louisiana State Department of Health. There is nothing in the record to indicate that the original work done in the receiving room was not in accordance with the plans, which show that the floor in that room is to be laid level throughout. However, the health authorities required that the floor be re-laid so as to slope to the floor drains, two of which were provided in that room. We have no difficulty in concluding that the work done in this connection is extra work, since it constitutes a deviation from the original plans.
In the laboratory,'it is shown that the floor was designed to slope to a single floor drain. A test showed that, instead of being the lowest point in the room, the drain was the highest. It is also clear from the record that the sub-floor, which was laid by defendant, was not properly graded, so that there was no way that the tile could be laid thereon in accordance with the specifications and still satisfy the design requirements. Defendant claims, however, that it was plaintiff’s responsibility to check his work and ascertain if it was properly graded before laying the tile.
Section 2 of the subcontract between the parties reads as follows:
“Subcontractor has read and is thoroughly familiar with said Contract Documents and agrees to be bound to Contractor by the terms of said Contract Documents insofar as they relate in any part or in any way to the work undertaken herein, and to assume towards Contractor, in connection with the work covered by this subcontract, all of the obligations and responsibilities which Contractor by those documents assumes towards the Owner or anyone else.”
Section 3 of the contract specifications relative to acid proof brick floors reads, in part, as follows :
“a. Over the KEMO Acid Proof Mastic membrane, install the waxed or paraf-fined Belden 8)4 x 1 Y%" acid proof brick floor properly laid and leveled and/or graded to drains. Acid proof brick to be laid in LECITE Cement mortar with bed and vertical joints not to exceed i/s" thickness of LECITE Cement mortar.
“b. All brick work shall be carefully laid and installed in such a manner that the finished floor will be uniformly level and/or will pitch uniformly to the drains, free from lumps and/or depressions and satisfactory to the Owner’s representative.”
*498 We find that the foregoing provisions of the contracts herein involved have the effect of placing the ultimate responsibility for the proper grade of the floor on the subcontractor, who is required to check the grade of the sub-floor and the level of the floor drain to be sure it is in accordance with the plans and specifications before going forward with his work. We find, therefore, that the work done by plaintiff in the laboratory was corrective in nature, occasioned by its own fault, and that it is not entitled to recover for same.
The invoice rendered for the additional work in the receiving room amounts to $1,501.33. Defendant claims that plaintiff has not proven the correctness of the invoice and that it is excessive. The invoice was admitted into evidence by stipulation. There is testimony that it was sent out in the ordinary routine of business and that the charges thereon were the usual charges. It is not disputed that the extra work was done, and not shown that the original work was in any way defective, or in any way contrary to the plans and specifications.
Defendant did offer an expert witness who testified that the overhead rate of 45% of the labor was excessive and that the square foot cost of laying the tile, $4.50, was about $2.00 per square foot more than the prevailing rate at that time. This testimony overlooks the fact that the extra work involved removing the original work and re-grading the subfloor, before laying the tile once again. Also, we note that plaintiff is domiciled in Pennsylvania, and could very well have an unusually high overhead on a job conducted in Louisiana.
We do not feel that the correspondence in this case, all of which relates to efforts to settle the claims, is of any real value in attempting to define the responsibilities of the parties hereto. We think this can best be accomplished by reference to the contract documents themselves, and the obligations assumed thereunder by the parties hereto.
The judgment appealed from is therefore amended by reducing the amount thereof to $1,501.29, and as amended, it is affirmed, at defendant’s cost.
Amended and affirmed.